IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN HEBERT, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-7140 |
| | : | |
| SPRING-FORD AREA | : | |
| SCHOOL DISTRICT, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**PEREZ, J.**                                                                                                                                         **JANUARY 5, 2026**

Plaintiff John Hebert initiated this *pro se* civil action alleging claims of employment discrimination against Spring-Ford Area School District ("Spring-Ford"), Robert Catalano, and Sandra Bernat. Hebert also seeks to proceed *in forma pauperis*. As set forth more fully below, the Court will grant Hebert leave to proceed *in forma pauperis* and will permit Hebert to proceed on certain of his "failure to hire" claims. All other claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Hebert will be granted the option of proceeding only on the claims that pass statutory screening, or filing an amended complaint to attempt to correct the deficiencies noted by the Court in the claims that are dismissed.

**I.      FACTUAL ALLEGATIONS**[1]

Hebert used the Court's form complaint for alleging employment discrimination, along with a supplement, to plead his claims. (*See* Compl. at 4-9.)[2] By checking the appropriate

---

[1] The factual allegations are taken from Hebert's Complaint ("Compl."). (ECF No. 2.) The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

[2] Hebert attached to his Complaint a copy of a September 18, 2025 Notice of Right to Sue Letter that he received from the Equal Employment Opportunity Commission. (ECF No. 2-1 at

locations on the form Complaint, Hebert indicates that he brings claims of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), as well as the Pennsylvania Human Relations Act ("PHRA"). (*Id.* at 4.) He lists the following as the discriminatory conduct of which he complains – "Failure to hire me," "Termination of my employment," "Failure to promote me," "Unequal terms and conditions of my employment," "Retaliation," and "Other (False, derogatory, and defamatory statements about me"). (*Id.* at 5-6.)

Hebert, who was fifty-seven years old when he filed the Complaint, alleges that he began working at Spring-Ford in December 2022 as a "technical support specialist, (IT help desk position)." (*Id.* at 7.) Hebert was employed by Eastern Business Software, Inc., a temporary staffing agency ("EBS"). (*Id.*) EBS notified Hebert by email on May 30, 2023, that Spring-Ford's School Board had "not authorized staffing assignment and that their preference was to hire directly." (*Id.*) On June 14, 2023, Hebert applied for a Support Technician position via Spring-Ford's online portal. (*Id.*) On June 26, 2023, Hebert submitted an application for a "Technology Support" position (Job ID # 953). (*Id.*) Hebert alleges that these positions are the same, and that as a contractor, he had been performing the job of Support Technician and Technology Support. (*Id.*) On August 14,[3] Hebert was notified by Spring-Ford that the Technology Support position had been filled. (*Id.*) On August 25, 2023, Hebert applied for two positions, Technology Support (Job ID # 1012), as well as Systems Administrator (Job ID # 1002). At some point, he was notified by Spring-Ford that the positions were filled. (*Id.*)

---

4-7.) He also attached a copy of the Charge of Discrimination that he submitted to the Pennsylvania Human Relations Commission. (*Id.* at 1-3.)

[3] In the Complaint, Hebert lists this date as August 14, 2024, rather than August 15, 2023. (*See* Compl. at 7.) This appears to be a typographical error.

Hebert contacted HR Director Sydney Wiesner via LinkedIn to follow-up on his applications.  (*Id.*)  Wiesner responded on October 11, 2023, that the two Technology Support positions had been filled.  (*Id.*)  Hebert states that he saw the names of the two new employees on Spring-Ford's website in July, and that one individual was "approximately in" his thirties while the other individual was in his thirties.  (*Id.*)  On October 18, 2024,[4] Hebert received a notification from Spring-Ford that the Systems Administrator position was being closed and would be reposted.  (*Id.*)

Hebert contends that he was not given a reason why he was not interviewed or hired for the positions for which he applied.  (*Id.*)  He concludes that he suffered discrimination on the basis of his age.  (*Id.*)  In support of this assertion, Hebert alleges that the Technology Support positions were entry-level, and that he met the job requirements for both the Technology Support positions and the Systems Administrator position.  (*Id.*)  He states that he has been working in various roles in the IT field and IT support field for twenty years and was previously employed by another school system as a Technology Coordinator, which is a higher-level position than both Technology Support and Systems Administrator.  (*Id.*)  He also had experience as a QA tester and experience in evaluating software.  (*Id.*)  According to Hebert, he was not counseled or disciplined for any aspect of his performance or conduct while he worked for Spring-Ford as a contractor and the two individuals who were hired for the Technology Support positions were significantly younger than him.  (*Id.*)  Hebert further asserts that "Respondents made several false, derogatory, and/or disparaging remarks to me, both during the term of my employment,

---

[4] It is unclear whether this reference to 2024 is also a typographical error, or whether Hebert did not receive written notice from Spring-Ford until one year later, in October 2024, that the Systems Administrator position was filled.  In any event, the year is not relevant for purposes of this screening Memorandum.

and in an exit interview with Catalano and Bernat" that "were intended to malign and characterize" Hebert as "being too slow, inept, uncooperative, difficult to work with, and generally not up to the demands of the position." (*Id.*) He claims that on "at least one occasion" he "verbally objected and complained about the comments to Bernat and Catalano." (*Id.*) Based on these allegations, Hebert seeks monetary relief. (*Id.* at 9.)

## II.     STANDARD OF REVIEW

Because Hebert appears to be unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to screen and dismiss the Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant. "[T]he plausibility paradigm announced in [*Bell Atl. Corp. v.*] *Twombly*[, 550 U.S. 544 (2007),] applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted). To state an employment discrimination claim, as with any other claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 213 (quotations omitted).

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se* status. *Id.* The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant also "'cannot flout procedural rules -they must abide by the same rules that apply to all other

litigants.'" *Id.; see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III. DISCUSSION

Federal law "proscribe[s] discrimination in employment based on several personal characteristics" including age. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623); *see also Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021) (claims under the ADEA align with claims under Title VII). Claims under the PHRA are interpreted coextensively with their federal counterparts. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). The ADEA prohibits discrimination against individuals who are over forty years of age. *See* 29 U.S.C. § 631(a); *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).[5]

---

[5] A plaintiff in an employment discrimination action may establish a *prima facie* case of discrimination either through direct evidence of discrimination, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), or based on circumstantial evidence through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. The *McDonnell Douglas* framework provides that a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. While a plaintiff need not establish a *prima facie* case to survive dismissal for failure to state a claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (distinguishing "proof" of a claim from the pleading standard); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

5

### A.     Failure to Hire

Based on the allegations in the Complaint, the Court understands Hebert to allege age-discrimination claims based on a failure to hire.  To state a plausible failure to hire claim, a plaintiff must allege enough facts to raise a reasonable expectation that discovery will reveal evidence that:  (1) he is at least forty; (2) he is qualified for the job; (3) he suffered an adverse employment action; and (4) he was passed over in favor of someone else who was sufficiently younger so as to support an inference of a discriminatory motive, or that the employer continued to seek out individuals with qualifications similar to his to fill the position.  *Id.* at 266 (citations omitted); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

Hebert alleges that he was over forty, that he was qualified for the positions for which he applied, was not hired, and two individuals in their thirties were hired for the Technology Support positions.  (Compl. at 7.)  Thus, taking the allegations as true as the Court must at this stage of the litigation, Hebert has alleged a sufficient basis for a discriminatory failure to hire claim based on either of the two Technology Support positions.  However, Hebert fails to sufficiently allege a discrimination claim based on his application for the Systems Administrator position because he does not allege that a significantly younger individual was hired for that position, or that Spring-Ford continued to seek out individuals with qualifications similar to his to fill the position.  (*See id.*)  Accordingly, Hebert will be allowed to proceed at this time on the failure to hire claims relating to the Technology Support positions but not the Systems Administrator position.

**B.      Hostile Work Environment and Retaliation**

Hebert also alleges that age-based derogatory remarks were made to him and that he objected to and complained about the comments. (*See* Compl. at 7.) It is possible that Hebert seeks to present hostile work environment and retaliation claims based on these allegations.[6]

To state a plausible claim, a plaintiff claiming a hostile work environment must allege intentional discrimination due to membership in a protected class, that was severe or pervasive, that detrimentally affected the plaintiff and would detrimentally affect a reasonable person in like circumstances, and that there was *respondeat superior* liability. *See Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (citing *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). The *respondeat superior* element determines whether the employer may be liable for acts of its employees. *Mandel*, 706 F.3d at 167 (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)). Generally, to allege this element plausibly, "the basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." *Id*. at 169 (citing *Huston*, 568 F.3d at 104). "The Supreme Court has emphasized that conduct must be extreme to satisfy this standard, so simple teasing, offhand comments, and isolated incidents (unless extremely serious) are inadequate." *Nitkin*, 67 F.4th at 570 (internal quotations omitted). "Title VII is not intended

---

[6] Claims of retaliation and hostile work environment under the ADEA and the PHRA are analyzed using the same standards as Title VII claims alleging these violations. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192-93 (3d Cir. 2015) (collecting cases); *see also Adams v. City of Newark*, 747 F. Supp. 3d 721, 731 (D.N.J. 2024) ("The Third Circuit has not yet determined whether . . . a [hostile work environment] claim can be made under the ADEA . . . [but] has on a number of occasions assumed *arguendo* that a hostile work environment claim can go forward under the ADEA." (citing *Howell v. Millersville Univ. of Pa.*, 749 F. App'x 130, 135 (3d Cir. 2018)); *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 137 (3d Cir. 2019) (noting the plaintiff had adequately alleged an ADEA hostile work environment claim); *Mulcahy v. Skipper*, No. 21-2788, 2022 WL 3081873, at *2 (3d Cir. Aug. 3, 2022) (*per curiam*) (affirming entry of summary judgment in favor of defendant on age-based hostile work environment claim).

as a 'general civility code,' and requires that 'conduct must be extreme' to constitute the kind of 'change in the terms and conditions of employment' the statute was intended to target." *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

To state a plausible retaliation claim under the ADEA, a plaintiff must allege: "(1) [that he engaged in] protected employee activity; (2) [an] adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *See Daniels*, 776 F.3d at 193 (applying the *McDonnell Douglas* framework to Title VII, ADEA, and PHRA retaliation claims). A general complaint about unfair treatment does not constitute protected activity; a plaintiff must show that he complained specifically about unlawful discrimination. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). Further, not every complaint to management is protected activity, and "anti-discrimination employment statutes are not intended to establish general standards for conduct of employers in dealing with employees." *Daniels*, 776 F.3d at 195 (citations omitted). A plaintiff's "subjective belief that a [co-worker]'s statement violated the ADEA does not suffice for her complaint [about that statement] to qualify as protected conduct." *Id.* at 194.

Hebert alleges that "false, derogatory, and/or disparaging remarks" were made to him during his employment and in an exit interview with Catalano and Bernat. (Compl. at 7.) He avers that these remarks characterized Hebert as being "too slow, inept, uncooperative, difficult to work with, and generally not up to the demands of the position." (*Id.*) Hebert also alleges that on "at least one occasion" he "verbally objected and complained about the comments to Bernat and Catalano." (*Id.*)

8

To the extent Hebert seeks to bring a hostile work environment claim, this claim is undeveloped.  It is unclear from the Complaint who allegedly made the comments and Hebert has failed to allege sufficient facts for the Court to determine that the alleged conduct was so severe or pervasive that a reasonable person in his position would find the Spring-Ford work environment to be hostile or abusive.  Similarly, Hebert's allegation that he "verbally objected and complained about the comments to Bernat and Catalano" without any context or factual development fails to support any of the elements of a retaliation claim.  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*, 809 F.3d at 786 (internal quotation marks and citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Martinez*, 986 F.3d 261 at 266 ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").  The Court will dismiss Hebert's hostile work environment claim and retaliation claim as pled but will give him leave to file an amended complaint in the event he can provide a clearer, more detailed account of the relevant events surrounding his allegations.

    **C.**    **Individual Liability**

Hebert names Robert Catalano and Sandra Bernat as Defendants, listing the same addresses for them as he provided for Spring-Ford.  (*See* Compl. at 5.)  However, Hebert does not otherwise identify these individuals in his pleading including what role, if any, they fill for Spring-Ford.  (*See id.*)

The ADEA does not provide for individual liability and thus any ADEA claim against Catalano and Bernat are dismissed with prejudice.  *See Hill v. Borough of Kutztown*, 455 F.3d

9

225, 246 n.29 (3d Cir. 2006); *Walker v. Wolf*, No. 21-2427, 2022 WL 2703607, at *2 (3d Cir. July 12, 2022) (*per curiam*).  Unlike its federal counterparts, however, the PHRA provides for liability against individual defendants but only when those individuals "aid, abet, incite, compel or coerce" any act declared by the PHRA to be an "unlawful discriminatory practice."  43 Pa. Cons. Stat. § 955(e).[7]  Nonetheless, individual liability under the PHRA is narrow.  It only applies to "supervisory employees."  *Dici v. Commonwealth*, 91 F.3d 542, 553 (3d Cir. 1996); *Jeannot v. Philadelphia Hous. Auth.*, 356 F. Supp. 3d 440, 449 (E.D. Pa. 2018).  Supervisors can be held liable under the PHRA in two circumstances:  (1) when the supervisor knew or should have known that the plaintiff was being subjected to discrimination but repeatedly failed to take prompt action to end the discrimination, or (2) when the supervisor engages in his or her own acts of discrimination against the employee.  *See Dici*, 91 F.3d at 553; *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 671 (E.D. Pa. 2016).

Hebert alleges that "Respondents" made "several false, derogatory, and/or disparaging remarks" to him during his employment and in an exit interview with Catalano and Bernat.  (Compl. at 7.)  He also alleges that he verbally objected and complained about the comments to Bernat and Catalano.  (*See id.*)  Hebert provides no details about either of these Defendants and does not allege what position either held at Spring-Ford, including whether either was his direct supervisor.  He also does not sufficiently allege what, if any, involvement either had in the alleged discriminatory conduct.  Without any facts about either of these Defendants, and without greater context for the alleged discriminatory conduct, Hebert has not alleged any plausible

---

[7] The PHRA states "[i]t shall be an unlawful discrimination practice . . . [f]or *any person*, . . . to aid [or] abet . . . an unlawful discriminatory practice . . . ."  43 Pa. Cons. Stat. § 955(e) (emphasis added).  In comparison, Title VII sets forth unlawful employment practices for employers, employment agencies, and labor organizations but makes no reference to employees or individuals.  *See* 42 U.S.C. § 2000e-2(a)-(c).

PHRA claim against either individual.  However, Hebert will be permitted the opportunity to amend the Complaint if he is able to allege facts to state a plausible PHRA claim.

## IV.     CONCLUSION

The Court will grant Hebert leave to proceed *in forma pauperis*.  As set forth more fully above, the Court is prepared to serve Hebert's ADEA failure to hire claims with respect to the Technology Support positions against Spring-Ford.  However, the ADEA claims against Catalano and Bernat are dismissed with prejudice and all other claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Considering Hebert's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects identified by the Court.[8]  In the alternative, Hebert may advise the Court that he seeks to proceed only on the ADEA failure to hire claims with respect to the Technology Support positions which pass statutory screening.

Hebert's motion for appointment of counsel (ECF No. 3) will be denied as premature. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).  This denial is without prejudice to Hebert's right to renew his motion for counsel should

---

[8] If Hebert chooses to file an amended complaint, the amended complaint must be a complete document that does not rely on the initial Complaint or other papers filed in this case to state a claim.  Although Federal Rule of Civil Procedure 15 contemplates amended pleadings, "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019).  "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.*  While the Court must liberally construe *pro se* pleadings, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019).  This means that the submission of an amended complaint "effectively constitutes an abandonment of any prior complaints filed by a plaintiff." *Smith v. Price*, No. 11-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).

the case proceed to the discovery stage, or to the Court's right to seek an appointment of counsel *sua sponte* if circumstances warrant it at a future date.

    An appropriate Order follows.

**BY THE COURT:**

_____
**HON. MIA R. PEREZ**
